**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-3098-WJM-SKC

SIGNATURE FINANCIAL, LLC,

     Plaintiff,

v.

DENVER COACH CHARTERS LLC,
IGOR DAVIDSON,
NATALYA DAVIDSON, and
DENVER LIMO INC.,

     Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

Before the Court is Plaintiff Signature Financial's ("Signature") Motion for Default Judgment Against Defendants ("Motion"). (ECF No. 17.) For the following reasons, the Motion is granted.

## I. BACKGROUND

**A.**    **Allegations in the Complaint[1]**

The Court takes the following facts from Plaintiff's Complaint (ECF No. 1) which, as a result of Denver Coach Charters LLC ("Denver Coach"), Igor Davidson ("I. Davidson"), Natalya Davidson ("N. Davidson"), and Denver Limo Inc.'s (collectively, "Defendants") default, are deemed admitted.

Signature is a New York limited liability company and subsidiary of Signature Bank, a New York banking corporation; Signature's sole member is Signature Bank.

---

[1] Citations to (¶ _), without more, are citations to Plaintiff's Complaint. (ECF No. 1.)

(¶ 1.)  I. Davidson and N. Davidson are natural persons domiciled in Colorado.  (¶¶ 3–4.)  Denver Coach is a Colorado limited liability company with I. Davidson as its sole member, and Denver Limo is a Colorado corporation with its principal place of business in Colorado.  (¶¶ 2, 5.)  Signature is the successor-in-interest to Grech Financial Services Inc. ("Grech") with respect to several contracts entered into between Grech and Defendants.  (¶¶ 12, 33, 61, 89, 116, 137, 165, 193, 220, 241, 269, 297.)  These contracts can be divided into two categories: three Installment Sale Agreements ("Agreements") and six Guaranties.

On or about September 26, 2018, Denver Coach entered into the first Agreement ("Agreement No. 1") to finance the purchase of a motor coach (Vehicle No. 1).  (¶ 8.)  Denver Coach agreed to eighty-four consecutive monthly payments of $5,752.16 to Grech, followed by one payment of $88,000, plus any applicable property or sales taxes.  (¶ 9.)  Denver Coach granted Grech a security interest in Vehicle No. 1.  (¶ 10.)  In connection with Agreement No. 1, I. Davidson, N. Davidson, and Denver Limo executed Guaranties ("Guaranty No. 1," Guaranty No. 2" and "Guaranty No. 3," respectively) unconditionally guaranteeing prompt payment and performance of Denver Coach's obligations in Agreement No. 1.  (¶¶ 31, 59, 87.)  Grech assigned all of its rights, title, and interest in and to Agreement No. 1, Vehicle No. 1, Guaranty No. 1, Guaranty No. 2, and Guaranty No. 3 to Signature.  (¶¶ 11, 32, 60, 88.)

Denver Coach accepted delivery of Vehicle No. 1 and thereafter began making payments to Signature.  (¶¶ 13, 34, 62, 90.)  Agreement No. 1 provides that any failure to make a monthly payment will result in default and allows Signature to accelerate payment in the event of default.  (¶¶ 15–16, 36–37, 64–65, 92–93.)  Acceleration also

triggers accrual of interest on the accelerated balance at 10% per annum. (¶¶ 17, 66, 94.) Denver Coach failed to make the payment due in July of 2021, defaulting on Agreement No. 1, and Signature accelerated the loan. (¶¶ 18–19, 39–40, 67–68, 95–96.)

Also on or about September 26, 2018, Defendants entered into an identical set of contracts with respect to another motor coach ("Vehicle No. 2"). Denver Coach entered into the second Agreement ("Agreement No. 2") to finance the purchase of Vehicle No. 2. (¶ 112.) All relevant terms of Agreement No. 2 are identical to those described above with respect to Agreement No. 1. (¶¶ 113–114, 119–123, 133–34, 140–44, 161–62, 168–72, 189–90, 196–200.) As with Agreement No. 1, I. Davidson, N. Davidson, and Denver Limo executed Guaranties ("Guaranty No. 4," Guaranty No. 5," Guaranty No. 6," respectively) unconditionally guaranteeing prompt payment and performance of Denver Coach's obligations in Agreement No. 2. (¶¶ 135, 163, 192.) Grech also assigned these contracts to Plaintiff. (¶¶ 115, 136, 164,192.)

Denver Coach accepted delivery of Vehicle No. 2 and thereafter began making payments to Signature. (¶¶ 117, 138, 166, 194.) Denver Coach failed to make the payment due in July of 2021, defaulting on Agreement No. 2, and Signature accelerated the loan. (¶¶ 122–23, 143–44, 171–72, 199–200.)

On or about August 29, 2019, Defendants entered into a similar set of contracts with respect to a third motor coach ("Vehicle No. 3"). Denver Coach entered into the third Agreement ("Agreement No. 3") to finance the purchase of Vehicle No. 3. (¶ 216.) Other than the amounts due, all relevant terms of Agreement No. 3 are identical to those described above with respect to Agreement No. 1 and Agreement No. 2.

(¶¶ 217–18, 223–27, 237–38, 244–48, 265–66, 272–76, 293-94, 300–04.)  As with Agreement No. 1 and Agreement No. 2, I. Davidson, N. Davidson, and Denver Limo executed Guaranties ("Guaranty No. 7," Guaranty No. 8," Guaranty No. 9," respectively) unconditionally guaranteeing prompt payment and performance of Denver Coach's obligations in Agreement No. 2.  (¶¶ 239, 267, 295.)  Grech also assigned these contracts to Plaintiff.  (¶¶ 219, 240, 268, 296.)

Denver Coach accepted delivery of Vehicle No. 3 and thereafter began making payments to Signature.  (¶¶ 221, 242, 270, 298.)  Denver Coach failed to make the payment due in July of 2021, defaulting on Agreement No. 3, and Signature accelerated the loan.  (¶¶ 226–27, 247–48, 275–76, 303–04.)

Signature has demanded payment from Defendants on all three loans but received nothing since Denver Coach's default.  (¶¶ 23, 50, 78, 106, 127, 154, 182, 210, 231, 258, 286, 314.)  Since initially filing this action, Plaintiff repossessed and subsequently sold all three vehicles, mitigating its damages by applying the net sale proceeds against Defendants' outstanding debt.  (ECF No. 17 at 15 (citing ECF No. 17-1 at 16–19).)

**B.   Procedural History**

Plaintiff filed its Complaint on November 11, 2021, alleging twelve claims of breach of contract against Defendants. (ECF No. 1.)  Plaintiff requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendants and award damages; (2) award Plaintiff its attorneys' fees, costs and any other amounts due under the terms of the Agreements; and (3) such other relief the Court deems just and proper.  (¶¶ A–M.)

Defendants were served with a copy of the Summons and Complaint in this case on December 2, 2021. (ECF Nos. 7–10.) Thus, Defendants were required to file an answer no later than December 23, 2021, under Federal Rule of Civil Procedure 12(a)(1)(A)(i). After Defendants failed to appear or otherwise defend the lawsuit, Plaintiff obtained the Clerk's Entry of Default on January 18, 2022. (ECF No. 14.) Plaintiff filed the Motion on March 25, 2022. (ECF No. 17.) As of this date, Defendants have not filed an answer or any other responsive pleading in this matter.

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party" in order to avoid further delay and uncertainty as to the diligent party's rights. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

## III. ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL

765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

### A.   Jurisdiction

The Court finds it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants, and the amount in controversy is greater than $75,000.  Additionally, the Court may exercise personal jurisdiction over Defendants because all are citizens of Colorado.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Dennis Garberg & Assoc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) (plaintiff need only make a prima facie showing of personal jurisdiction if the motion for default judgment is decided only on the basis of the parties' affidavits and other written materials).

### B.   Substantive Liability

The Agreements and Guaranties contain choice of law provisions selecting California law.  Section 12 of the Agreements provides: "This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of California."  (*E.g.*, ECF No. 1-1 at 5.)  Section 12 of the Guaranties provides: "THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA."  (*E.g.*, ECF No. 1-3 at 2.)  Therefore, the Court will give effect to these provisions and interpret the Agreements and Guaranties under California law.

"The elements for a breach of contract action under California law are: (1) the

existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014). The Court finds the Complaint alleges facts that support each of these elements.

The facts alleged in the Complaint support the existence of a contract with respect to the Agreements and the Guaranties. The Agreements are each installment sale agreements through which, in exchange for financing to purchase motor coaches, Denver Coach agreed to installment payments. (*E.g.*, ¶ 8.) In the Guaranties, in exchange for the financing facilitated by the Agreements, as additional consideration and to induce Grech to provide the financing, I. Davidson, N. Davidson, and Denver Limo guaranteed Denver Coach's obligations due under the Agreements. (*E.g.*, ¶ 31.) Further, Grech assigned these contracts to Plaintiff. (*E.g.*, ¶¶ 11–12.)

Plaintiff performed all of its obligations, to the extent there are any, under the Agreements (and Denver Coach in fact received the motor coaches it purchased with the financing provided by Grech). (*E.g.*, ¶¶ 13, 22.) Likewise, Plaintiff has performed all of its obligations, to the extent there are any, under the Guaranties. (*E.g.*, ¶¶ 52, 80.)

Denver Coach breached the Agreements by failing to make the installment payments due in July 2021. (¶¶ 18, 122, 226.) I. Davidson, N. Davidson, and Denver Limo, as guarantors, were obligated to make the payments upon demand from Signature. (*See, e.g.*, ¶ 31.) Despite Signature demanding payment, it has received no payments from Defendants after the initial default on the Agreements. (*E.g.*, ¶¶ 50, 78, 100.)

Plaintiff has been damaged by Defendants' breach of the Agreements and

7

Guaranties. At the time the Complaint was filed, Defendants' breach and subsequent failure to pay once the loans were accelerated caused Plaintiff more than a million dollars in damages. (¶¶ A–M.)

The Court therefore finds that default judgment should be entered.

**D.    Damages**

Having determined that a default judgment should be entered, the Court must next determine the amount and character of Plaintiff's recovery. *See* 10A Charles Alan Wright et al., Federal Practice & Procedure § 2688 (3d ed., Apr. 2015 update); *see also Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) ("A final default judgment cannot be entered against a party until the amount of damages has been ascertained.") Actual proof must support any default judgment for money damages. *See Klapprott v. United States*, 335 U.S. 601, 611–12 (1949). In some situations, that proof is provided in a hearing; however, the Court may enter a default judgment without a hearing if the amount claimed is "a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

Here, Plaintiff has supplied the declaration of David McGowan, a Vice President in Signature's Asset Management Division. (ECF No. 17-1.) McGowan's declaration provides a factual background on Signature's successful repossession and sale of the three motor coaches, calculates the net proceeds of those sales, and applies the net proceeds to the balances due and owing on the Agreements. (*Id.* at 16–20.) As of March 21, 2022, the date of McGowan's declaration, the total outstanding balance on the Agreements was $803,479.03, consisting of $711,723.59 of principal and $91,755.44 of interest. (*Id.* at 19.) Of the accrued interest, $36,947.43 accrued prior to

8

the sale of the motor coaches.  (*Id.*)  Under the terms of the Agreements, following an event of default, interest accrues at a rate of 10% per annum based on a 365-day year.  (*Id.*at 13.)  Because significant time has passed since the McGowan declaration was prepared, the Court must recalculate damages.

As of March 21, 2022, Defendants owed $256,102.76 under the terms of Agreement No. 1 and the related Guaranties.  (*Id.* at 17.)  Of this amount, $224,221.85 was principal, accruing interest at a rate of $61.43 per diem ((224,221.85 * 0.1)/365).  (*See id.*)  From March 21, 2022, to the date of this Order is 357 days, resulting in an additional $21,930.51 in interest.  Therefore, as of the date of this Order, Defendants owe $278,033.27 under the terms of Agreement No. 1 and the related Guaranties.

As of March 21,2022, Defendants owed $259,561.53 under the terms of Agreement No. 2 and the related Guaranties.  (*Id.* at 18.)  Of this amount, $234,206.64 was principal, accruing interest at a rate of $64.17 per diem ((234,206.64 * 0.1)/365).  (*See id.*)  From March 21, 2022, to the date of this Order is 357 days, resulting in an additional $22,908.69 in interest.  Therefore, as of the date of this Order, Defendants owe $282,470.22 under the terms of Agreement No. 2 and the related Guaranties.

As of March 21, 2022, Defendants owed $287,814.74 under the terms of Agreement No. 2 and the related Guaranties.  (*Id.* at 19.)  Of this amount, $253,295.10 was principal, accruing interest at a rate of $69.40 per diem ((253,295.10 * 0.1)/365).  (*See id.*)  From March 21, 2022, to the date of this Order is 357 days, resulting in an additional $24,775.80 in interest.  Therefore, as of the date of this Order, Defendants owe $312,590.54 under the terms of Agreement No. 3 and the related Guaranties.

The Agreements also provide that Plaintiff "shall be entitled to recover all of its

attorney's fees, costs and expenses in connection with any litigation with respect to [the] Agreement[s]." (*E.g.*, ECF No.17-1 at 40.)  Therefore, the evidence provided is sufficient for the Court to award Plaintiff $873,094.03 in damages through the date of this Order, plus its attorneys' fees and costs associated with this litigation upon filing of a fee application and proper bill of costs.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion for Default Judgment (ECF No. 17) is GRANTED;

2. The Clerk shall enter DEFAULT JUDGMENT in favor of Plaintiff and against Defendants the amount of $876,019.03;

3. By **March 24, 2023**, Plaintiff shall submit all documentation required by rule and applicable case law of the reasonable amount of attorneys' fees expended in this matter and in support of a separate motion for same.

4. By **March 24, 2023**, Plaintiff shall submit a proper bill of costs.


Dated this 13th day of March, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge